## UNITED STATES v. STORES and another.

*(Circuit Court, S. D. Florida. November Term, 1882.)*

1. PENALTY—CUTTING TIMBER ON PUBLIC LANDS—"TIMBER" DEFINED.
      The term "timber," as used in section 2461, Rev. St., does not apply alone to large trees fitted for house or ship building, but includes trees of any size, of a character or sort that may be used in any kind of manufacture or the *construction* of any article.

2. SAME—PROSECUTION FOR—USE OF TREES NO JUSTIFICATION.
      Using trees for fire-wood or burning into charcoal is no justification of the cutting.

3. SAME—HOMESTEAD ENTRY—No EFFECT ON TITLE.
      A homestead entry works no change in the title of lands which can prevent a prosecution under the said section.

Indictment for Cutting Timber on Lands of the United States.

*G. Bowne Patterson,* U. S. Dist. Atty., for the United States.

*J. B. Browne,* for defendants.

LOCKE, D. J., *(charging jury.)* These parties have been indicted for cutting timber on lands of the United States, contrary to the act of March 2, 1831, re-enacted in section 2461, Rev. St.; and there appear but two questions which require for you any instructions from the court, namely, the meaning of the term "timber" as used in the statute; and the character of the land upon which such cutting, if any, was done, in respect to its title or ownership. The term "timber," as used in commerce, refers generally only to large sticks of wood, squared or

capable of being squared for building houses or vessels; and certain trees only having been formerly used for such purposes, namely, the oak, the ash, and the elm, they alone were recognized as timber trees; but the numerous uses to which wood has come to be applied, and the general employment of all kinds of trees for some valuable purpose, has wrought a change in the general acceptation of terms in connection therewith, and we find that Webster defines "timber" to be "that sort of wood which is proper for buildings or for tools, utensils, furniture, carriages, fences, ships, and the like." This would include all sorts of wood from which any useful articles may be made, or which may be used to advantage in any class of manufacture or construction.

With so many peculiar significations, the intended meaning of the word usually depends upon the connection in which it is used or the character of the party making use of it,—as, for instance, a ship-carpenter would understand something quite different when he made use of it from what a cabinet-maker, a last-maker or a carriage-builder would,—and the question is, therefore, not what is the popular meaning as understood by any one class, but its meaning as used in the statute, and how the legislators have employed it; and this must be its most general and least-restricted sense, including in such signification what each and all classes would under such circumstances understand "timber" to be.

The language of the section under which this indictment was found mentions particularly live-oak and red-cedar trees, and then speaks of other timber, showing conclusively that it was not the intention of congress to confine the protection intended to any particular class or kind of trees, but to apply it in its most general sense.

To ascertain the meaning and intent of legislation no more direct or satisfactory way can be suggested than by referring to the manner in which the same terms are used in other enactments.

This word has been frequently used by congress on different occasions and for different purposes. Section 2317 of the Revised Statutes, and the acts of 1874 and 1875, provide that persons planting and protecting timber on the public lands shall be entitled to patents therefor. Section 2464 provides for planting timber and keeping it in a growing condition. The same term is used also in sections 2465 and 2466, and in each of these places in a manner that precludes absolutely the idea that the term "timber" was intended to be confined to such trees or wood of such sizes as must be especially adapted to house or ship building. The term is here used for live, growing

trees of a useful class, and cannot possibly be held to apply to those of a large size only.

The object of this prohibitory legislation is undoubtedly to prevent stripping the public lands of their growth of forests regardless of the present size and character of the individual trees, and the term used is intended to apply generally for that purpose; and if it is found that live trees of such a character or sort as might be of use or value in any kind of manufacture, or the construction of any useful articles, were cut, the charges in that respect, namely, the character of the timber, has been sufficiently proven. It matters not to what purposes the timber may have been applied after being cut, if converted to the use of the party accused. Selling it for fire-wood or burning it into charcoal would be no defense or excuse for cutting and removing; nor can it be evidence of the worthlessness of the timber cut sufficient to justify it. It must be found that the lands upon which the timber, if any, was cut were lands of the United States, sufficiently described and identified to satisfy you upon that point. It need not have been reserved or purchased for the sake of timber. A homestead entry, although it gives the party entering certain rights of occupation, does not so convey title or divest the United States of property in it as to change its character in this respect; and it is immaterial, therefore, whether the land had been entered for homestead by a third party or not. It is not claimed, nor does it appear, that the defendants herein had any interest, by homestead or otherwise.

Jury found verdict of guilty.

*Vide U. S.* v. *Briggs,* 9 How. 351; *U. S.* v. *Redy,* 5 McLean, 358; *U. S.* v. *Shuler,* 6 McLean, 28; *U. S.* v. *Cook,* 19 Wall. 592; *Forsythe* v. *U. S.* 9 How. 577; *Paine* v. *Northern Pac. R. Co.* 14 Fed. Rep. 407; *The Timber Cases,* 11 Fed. Rep. 81; *U. S.* v. *Smith,* 11 Fed. Rep. 487; *U. S.* v. *Mills,* 9 Fed. Rep. 684.