(C.D. 4541)

JACK BRYAN, INC. *v.* UNITED STATES

198

Court No. 73-3-00687

(Decided May 14, 1974)

*Glad, Tuttle & White* (*Edward N. Glad* of counsel) for the plaintiff.
*Carla A. Hills,* Assistant Attorney General (*Velta A. Melnbrencis,* trial attorney), for the defendant.

RAO, Judge: The merchandise involved in this case was imported from Hong Kong and consists of items, such as collars, cuffs, belts, and parts for blouses or dresses, made up of nets of wool or man-made fiber on which have been sewn beads, bugles, spangles, or imitation gemstones or combinations thereof. It was classified as women's wearing apparel, ornamented, and was assessed with duty under item 382.02 or item 382.04, Tariff Schedules of the United States, depending upon whether it was in chief value of wool or man-made fibers. (Style No. 8078 in entry No. 120179 was classified under item 807.00 and assessed with duty at the rate applicable under item 382.04 upon

the value of the merchandise less the cost or value of the products of the United States which had been exported for assembly.) It is claimed in the amended complaint that the merchandise is not wearing apparel, but parts thereof; that some items are in chief value of beads, bugles, spangles, imitation gemstones or combinations thereof and are dutiable under item 741.50, as modified, as articles not specially provided for, of beads, of bugles, of spangles, of imitation gemstones, or of any combination thereof; and that the other items are in chief value of fabric and are dutiable under item 386.08, as modified, as textile articles, not specially provided for.

The pertinent provisions of the tariff schedules are:

General Headnotes and Rules of Interpretation:

\* \* \* \* \* \* \*

10. General Interpretative Rules. For the purposes of these schedules—

\* \* \* \* \* \* \*

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

Schedule 3. – Textile Fibers and Textile Products

Schedule 3 headnotes:

\* \* \* \* \* \* \*

2. For the purposes of the tariff schedules—

(a) the term "textile materials" means—

\* \* \* \* \* \* \*

(iv) the fabrics provided for in part 3 and part 4 of this schedule,

\* \* \* \* \* \* \*

(vi) \* \* \* articles produced from any of the foregoing products;

\* \* \* \* \* \* \*

3. For the purposes of the tariff schedules—

(a) the term "ornamented", as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

\* \* \* \* \* \* \*

(iv) applique and replique work, beads, bugles, spangles, bullions, or ornaments; or

(v) any combination of the foregoing types or methods of ornamentation;

(b) ornamentation of the types or methods covered hereby consists of ornamenting work done to a pre-existing textile fabric, whether the ornamentation was applied to such fabric—

(i) when it was in the piece,

(ii) after it had been made or cut to a size for particular furnishings, wearing apparel, or any other article, or

(iii) after it had actually been incorporated into another article,

and if such textile fabric remains visible, at least in significant part, after ornamentation: * * *

(c) applique work, beads, bugles, spangles, bullions, and other forms of non-textile ornamentation applied to a textile fabric or other article of textile materials shall be disregarded in determining the component material of chief value of such fabric or other article.

*     *     *     *     *     *     *

## Part 6. – Wearing Apparel and Accessories

### Subpart F. – Other Wearing Apparel

Subpart F headnote:

1. This subpart covers only wearing apparel, not specially provided for, of textile materials.

*     *     *     *     *     *     *

Women's, girls', or infants' lace or net wearing apparel, whether or not ornamented, and other women's, girls', or infants' wearing apparel, ornamented:

| | | |
|---|---|---|
| *   *   *   *   * | * | * |
| 382.02 | Of wool_____ | 42.5% ad val. |
| 382.04 | Of man-made fibers_____ | 42.5% ad val. |
| *   *   *   *   * | * | * |

Part 7. – Miscellaneous Textile Products; * * *

Subpart B. – Textile Articles Not Specially Provided For

<u>Subpart B headnote:</u>

　　1. This subpart covers articles, of textile materials, not covered elsewhere in the tariff schedules.

　　Articles not specially provided for, of textile materials:

　　　　Lace or net articles, whether or not ornamented, and other articles ornamented:

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| | * | * | * | * | * | * | * |
| 386.08 | Other _____ | | | | | 35% ad val. [for merchandise entered during 1970, T.D. 68–9] | |
| | | | | | | 30% ad val. [for merchandise entered during 1971, T.D. 68–9] | |

* * * * * * *

Schedule 7. – Specified Products; Miscellaneous and Nonenumerated Products

* * * * * * *

Part 6. – Jewelry and Related Articles; Cameos; Natural, Cultured, and Imitation Pearls; Imitation Gemstones; Beads and Articles of Beads

* * * * * * *

| | | | |
|---|---|---|---|
| 741.50 | Articles not specially provided for, of beads, of bugles, of spangles, of imitation gemstones, or of any combination thereof _____ | 17.5% ad val. [for merchandise entered during 1970. T.D. 68–9] | |
| | | 15% ad val. [for merchandise entered during 1971, T.D. 68–9] | |

Samples of the merchandise were received in evidence and testimony was adduced from Jack Andrew Bryan, president of Jack Bryan, Inc., manufacturer of women's wearing apparel, principally cocktail and after-five dresses, and importer of beaded parts to be sewn in this country.

The entries, styles and claimed classifications set out in the amended complaint, and the exhibits representing the merchandise are as follows:

| Entry No. | Style No. | Exhibit No. | Claimed classification |
|---|---|---|---|
| 120179 | 8062 | 4 | 741. 50 |
| | 8071 | 6 | 741. 50 |
| | 8078 | 7 | 386. 08 |
| 124838 | 9068 | 1 | 741. 50 |
| | 4014/8081L | 2 | 386. 08 |
| 800874 | 8051 | 3 | 386. 08 |
| | 21504 | none | 386. 08 |
| | 8062 | 4 | 741. 50 |
| | 2002/1166 | 5 | 741. 50 |

Claims as to styles not mentioned in the amended complaint are deemed abandoned.

Collective exhibit 1, representing style No. 9068, consists of a collar and two cuffs of pink fabric, ornamented with bugles, beads and imitation gemstones. The articles are not finished but have raw edges. The fabric portion is clearly visible. According to the witness, after importation the pieces are lined to give them shape and body. Pink fabric is used to match the other part of the garment. The witness said he did not want the pink material to be seen but he had to use something to put the beads on. He stated that the fabric cost 17 or 18 cents and the beads, pearls, and stones 42 cents.

Exhibit 2 is a sketch, purporting to represent style No. 4014, consisting of a front bodice with two back panels and a little turtleneck. Mr. Bryan said it is made of a polka-dotted fabric which is sent overseas to have beaded designs put on to cover the dots. When the parts are sewn together, the article is a completed blouse. Style No. 4014 was conceded to be in chief value of fabric.

Collective exhibit 3 consists of a front, two back panels and two sleeves for the bodice of style No. 8051. The fabric portion is pink lace or net and it is ornamented with bugles, spangles, and beads. This exhibit was conceded to be in chief value of fabric. According to the witness, a skirt came with this style, but he could not find a sample. He said that all that needed to be done to form a complete garment was to sew the pieces together and to cut and sew the lining.

Collective exhibit 4 consists of two beige net articles elaborately ornamented with beads, bugles and stones but with some of the textile fabric visible. The witness said the articles would form the beaded top of a velvet or satin dress identified as style No. 8062. These two parts are needed to form a Fabiana neckline to complete the garment. According to the witness, the cost of the fabric was 13 cents and the beading material $1.19.

Illustrative exhibit 5 consists of a yellow belt with backing, ornamented with beads and bugles. According to the witness, the merchandise comes in without the backing and is used with style No. 1166. It was designed to be a belt but could also be used to make a cummerbund in which case it might be sewn right into the garment. The witness said the fabric was polyester chiffon which came from Japan and cost roughly 12 cents. The beading material cost 40 cents.

Collective exhibit 6, representing style No. 8071, consists of two pieces of pink material ornamented with bugles and various sized stones. According to the witness, the two pieces form a collar or swirl. The fabric is cut here and the collars sent to Hong Kong for beading. When the beaded parts are returned, they are lined and sewn onto the dress to complete it. The pink colored material was used to match the particular dress for which it was designed. The fabric had to come from the same dye lot. Mr. Bryan said the cost of the fabric just before it was joined with the beads was 20 cents and the beading approximately $1.10.

Collective exhibit 7, representing style No. 8078, consists of three pieces of velvet ornamented in part with beads, stones, and embroidery. Mr. Bryan said the velvet was purchased and the embroidery done here, after which the pieces were sent overseas for beading. When the pieces are lined and assembled, they form a top for a long pair of pleated polyester pants or a long pleated chiffon skirt. The top is a complete garment in itself. It was conceded that this merchandise was in chief value of fabric.

There is no sample of style No. 21504, but the witness stated it was a beaded lace dress or parts.

Exhibit 8 is a letter from the Bureau of Customs referring to samples of collars, cuffs, or belts ornamented with beads, spangles, bugles, or imitation gemstones. The opinion of the Bureau was that the samples in which a considerable portion of the fabric was visible was classifiable as wearing apparel under item 382.04 and that the sample in which the material beyond the beaded area was to be cut away would qualify as a fabric fully covered by beads and bugles, dutiable under item 741.50.

Exhibit A is a certified copy of a judgment of conviction of the witness Jack A. Bryan of knowingly and wilfully introducing garments

and garment parts into the commerce of the United States by the use of false statements and fraudulent practices to conceal material facts from the Bureau of Customs.

Exhibit B consists of a piece of fabric fully covered by beads and stones in such a way that the fabric is barely visible.

The district director classified the imported merchandise as women's wearing apparel, ornamented, under item 382.02 or item 382.04, *supra*. Plaintiff claims, however, that the imported merchandise is not wearing apparel but dress parts and that the TSUS item numbers do not provide for parts of wearing apparel.

Parts of an article are not included within an *eo nomine* designation of the article itself unless there is a specific provision for parts. *Murphy & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 256, T.D. 41201 (1925) ; *United States* v. *Draeger Shipping Co.*, 18 CCPA 308, T.D. 44561 (1931) ; *Herman Miller Clock Co.* v. *United States*, 22 CCPA 332, T.D. 47363 (1934) ; *United States* v. *Lyons Transport*, 45 CCPA 104, C.A.D. 681 (1958) ; *Pacific Fast Mail* v. *United States*, 68 Cust. Ct. 41, C.D. 4333, 338 F. Supp. 506, *appeal dismissed*, 59 CCPA 223 (1972).

The term wearing apparel, however, is a generic or descriptive one. *Jaeger's Sanitary Woolen System Co.* v. *United States*, 11 Ct. Cust. Appls. 181, T.D. 38962 (1921). Under prior tariff acts it was held to mean all articles of wearing apparel worn by human beings for reasons of decency, comfort and adornment. *Arnold* v. *United States*, 147 U.S. 494 (1893) ; *Guthman* v. *United States*, 1 Ct. Cust. Appls. 170, T.D. 31214 (1911) ; *Antonio Pompeo* v. *United States*, 40 Cust. Ct. 362, C.D. 2006 (1958) ; *United Merchandising Corp.* v. *United States*, 44 Cust. Ct. 420, Abstract 64074 (1960).

Former tariff acts contained provisions for "Clothing, ready-made, and articles of wearing apparel of every description * * * made up or manufactured, wholly or in part, by the tailor, seamstress or manufacturer" (Tariff Act of 1897, paragraph 390; Tariff Act of 1909, paragraphs 324, 382, 402; Tariff Act of 1913, paragraphs 256, 291, 317) or for "Clothing, and articles of wearing apparel of every description, * * * whether manufactured wholly or in part" (Tariff Act of 1922, paragraphs 1017, 1115, 1210; Tariff Act of 1930, paragraphs 919, 1017, 1115(a), 1210, 1311).

Under such provisions the following have been classified as wearing apparel: Collars and cuffs, parts of collars, collars and cuffs which have only to be cut from the piece, collarettes, belts, and shirt bosoms. *Massce & Co.* v. *United States*, 18 CCPA 243, T.D. 44424 (1930) ; *Taxis* v. *United States*, 1 Ct. Cust. Appls. 92, T.D. 31109 (1910) ; *Krusi* v. *United States*, 1 Ct. Cust. Appls. 168, T.D. 31213 (1911) ; *J. Sachs &*

*Co.* v. *United States*, 24 Treas. Dec. 670, T.D. 33406 (1913); *Frank & Simmons* v. *United States*, T.D. 16583, G.A. 3279 (1895); *Borab Bros.* v. *United States*, 12 Cust. Ct. 13, C.D. 825 (1944); *United States* v. *Snow's United States Sample Express Co.*, 6 Ct. Cust. Appls. 120, T.D. 35388 (1915).

In *Sand & Siman* v. *United States*, 73 Treas. Dec. 901, T.D. 49594 (1938), it was held that cuffs to put on gloves to complete them were not classifiable as gloves, finished or unfinished, because the provision for gloves would not cover parts of gloves, but that they were classifiable under the provision for "articles of wearing apparel of every description, manufactured wholly or in part * * *." The court said that the test for classification under that provision was that the imported merchandise must be so far advanced in manufacture as to be at least a part of a particular article of wearing apparel.

In *United States* v. *G. L. Ramsey % Juvenile Mfg. Co.*, 42 CCPA 106, C.A.D. 580 (1955), the merchandise consisted of baby dress fronts which had been exported to Mexico to be embroidered. Previously material had been cut into fronts, backs, sleeves, neckbands, collars and cuffs for complete garments. The parts were all earmarked for size and color so that upon the return of the merchandise, the proper dress fronts, backs, sleeves, neckbands, collars and cuffs could be matched and united, the neckband finished off, and buttons attached. They then constituted complete garments. They were held dutiable under a provision in paragraph 1529(a), Tariff Act of 1930, as modified, for "Articles of wearing apparel, finished or unfinished, * * * in whole or in part of machine-made lace, or embroidered * * *," rather than under the provision for "fabrics and articles embroidered * * * and fabrics and articles wholly or in part thereof, finished or unfinished * * *." The court agreed with the conclusion of the Customs Court that the dress fronts consisted of articles of unfinished wearing apparel, that is, unfinished baby dresses, and stated (pp. 108–109):

> The court in reaching its conclusion proceeded on the basis that the involved legislation explicity provides not only for wholly completed fabrics and articles of wearing apparel but also for articles which, although embroidered, are otherwise unfinished and exclusively dedicated to use as part of a specific garment. In a painstaking and well-considered decision a list of authorities defining the principle of law applicable to the issues presented was accurately analyzed by the court, including, for example, *United States* v. *Snow's U.S. Sample Express Co.*, 6 Ct. Cust. Appls. 120, T.D. 35388, 28 Treas. Dec. 750; *United States* v. *Cartier (Inc.)*, 15 Ct. Cust. Appls. 334, T.D. 42493; *In re Mills et al.*, 56 Fed. 820.
>
> With respect to the case last cited, the court made this pertinent comment:

In construing the phrase "made up wholly or in part" in Mill's case in the United States Circuit Court for the Southern District of New York (56 Fed. 820), Judge Lacombe used this language:

> I think the true criterion when it is applied to wearing apparel is this: That it must at least be made up sufficiently far to enable us to identify the particular article of wearing apparel that is going to be made out of it.

Likewise in *Bata Shoe Co., Inc.* v. *United States*, 6 Cust. Ct. 50, C.D. 423 (1941), the court cited many cases and concluded (p. 52):

> A careful reading of the numerous decisions cited, *supra*, we think will show that the uniform construction by this court of the provision for wearing apparel manufactured in whole or in part has been, in effect, to regard a definite part of an article of wearing apparel as wearing apparel manufactured in part. At any rate such rule of construction, commencing with the Tariff Act of 1890 and continuing under the succeeding tariff acts up to the present time, we think is now too long established under the well-known principle of legislative sanction of judicial interpretation to be now disturbed or questioned. The construction contended for by counsel for the Government would probably be more proper and logical if the said provision was simply for wearing apparel, finished or unfinished, instead of for wearing apparel, manufactured wholly or in part.

The court is now confronted with the provision in the tariff schedules for wearing apparel, with the phrases "assembled or not assembled" and "finished or not finished" being supplied by General Interpretative Rule 10(h). Was there an intent to exclude merchandise such as that involved herein from classification as wearing apparel?

The Tariff Classification Study, Schedule 3, part 6, pp. 223 and 228, states:

> Part 6 covers handkerchiefs, mufflers, scarves, shawls, veils, neckties, hosiery, garters, suspenders, body-supporting garments, rainwear, underwear, and other articles of textile wearing apparel except footwear, headwear, and gloves which are specifically provided for in schedule 7.
>
>    \*      \*      \*      \*      \*      \*      \*
>
> Items 380.03 through 382.37 do not involve significant rate changes. The shirt collars and cuffs of vegetable fibers covered by items 380.30 and 380.48 are presently dutiable at compound rates of duty. In the proposed provisions such rates have been converted to their ad valorem equivalents.

In *The Baylis Brothers, Inc.* v. *United States*, 60 Cust. Ct. 336, C.D. 3383, 282 F. Supp. 791 (1968), *aff'd*, 56 CCPA 115, C.A.D. 964, 416 F.2d 1383 (1969), neither court nor counsel indicated that the change of language in TSUS was significant. That case involved smocked

dress fronts, some of which were dutiable under the Tariff Act of 1930, as modified, and some of which were dutiable under TSUS. The Customs Court said (p. 337):

> * * * Counsel for the respective parties stipulated that the imported merchandise consists of unfinished wearing apparel wholly or in chief value of cotton. Although the dress fronts are unfinished articles, they are covered by paragraph 1529(a) by reason of the prefatory statement to such paragraph, as they are covered by the relevant TSUS tariff descriptions by reason of General Interpretative Rule 10(h) of said TSUS which provides:
>
>> unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

In view of the fact that in TSUS it was sought to limit the merchandise falling within basket clauses (Tariff Commission Submitting Report, pp. 15–16), it seems unlikely that Congress would have relegated articles which had been classified since 1890 as unfinished wearing apparel to a basket provision for articles, not specially provided for, of textile materials. On the contrary, the Tariff Classification Study, Schedule 3, p. 249 states:

> * * * Inasmuch as the significant articles of trade have been specially provided for systematically throughout schedule 3 and in a number of special provisions in schedule 7, there seems little likelihood that subpart B of part 7 [Textile Articles Not Specially Provided For] would cover very much in the way of significant imports.

In support of its position that the instant merchandise is not classifiable under the TSUS provisions for wearing apparel, plaintiff relies upon *Authentic Furniture Products, Inc.* v. *United States*, 61 CCPA 5 C.A.D. 1109, 486 F.2d 1062 (1973). In that case it was held that merchandise consisting of wooden headboards, footboards, posts, ladders and guardrails in unassembled condition were classifiable as parts of furniture under item 727.40 rather than as furniture under item 727.35, in view of the absence of siderails which the court found were essential parts of bunk beds. The court stated:

> We find no error in the lower court's holding that parts of an article may be classified as the unfinished article itself only when the imported pieces constitute a substantially complete article, albeit in unassembled condition. We fully agree that the definition of "unfinished" found in *American Import Co.* v. *United States*, 26 CCPA 72, T.D. 49612 (1938) and carried over to the TSUS in *Finn Bros., Inc.* v. *United States*, 59 CCPA 72, 454 F.2d 1404, C.A.D. 1042 (1972) can be, and has been, employed only to distinguish, in the sense of the tariff schedules, the status of an unfinished article from the material of manufacture. The so-called

"dedication to use" test found in those cases makes no distinction whatsoever between the unfinished article and parts thereof.

In that case there were specific tariff provisions for both furniture and parts of furniture, whereas in the instant case the provision is for wearing apparel, a term that has been given broad interpretation under tariff statutes.

It is clear from the testimony and the exhibits here that the imported pieces are unfinished. They have raw edges which have to be folded and pasted or sewn and joined with other parts of a garment and sewn together. Most of them are to be backed or lined. Each is dedicated to use as a particular article of wearing apparel or to be attached to the particular garment for which it was designed. Under *United States* v. *G. L. Ramsey a/c Juvenile Mfg. Co., supra,* and *The Baylis Brothers, Inc.* v. *United States, supra,* they would be classifiable as wearing apparel unfinished, even though all the parts were not included in the importation.

In view of General Interpretation Rule 10(h), the long-continued interpretation of the term "wearing apparel" in tariff acts, and the legislative history, I find that the imported articles are wearing apparel, unfinished and unassembled, and are classifiable as wearing apparel under TSUS. While a lining or a backing has to be supplied to complete some of the articles, they are incidental parts of the garment and are not so essential as to prevent classification of the merchandise as wearing apparel. *Cf. Finn Bros., Inc.* v. *United States,* 59 CCPA 72, C.A.D. 1042, 454 F.2d 1404 (1972), where ivory roses were considered unfinished jewelry when all that was lacking was the earring back or pin.

Wearing apparel of textile materials is classifiable under schedule 3 of the tariff schedules. Plaintiff claims, however, that the merchandise represented by exhibits 1, 4, 5, and 6 is excluded from that classification by reason of the definition of "ornamented" in headnote 3, schedule 3, *supra,* on the ground that the fabric is not visible in significant part.

Exhibits 1 and 6 are both collars of pink fabric with the same type of ornamentation. While the witness said he could not see the fabric portion of exhibit 1 without glasses, he admitted he could see the material in exhibit 6 because the beading was in an open latticework design. He stated that the pink material was used to match the particular apparel for which the merchandise was designed. An examination of the samples reveals that a considerable portion of the fabric is visible.

Illustrative exhibit 5 is the completed belt made of the imported beaded material. The yellow fabric portion is visible and lends color

to the article. According to the witness, it is designed for a particular style dress. It appears that the color would be significant either to match the dress or as a contrasting color.

Collective exhibit 4 consists of a loosely woven net fabric in a light beige color, highly ornamented, but not fully covered with beads, stones or bugles. According to the witness, the overall appearance is beading and when worn, the fabric would not be seen from 6 feet away. However, from an examination of the sample, it appears that the net fabric remains visible whether the article is used over other materials or is used as a dress top worn against the skin. It is a significant part of the design, setting off the various portions from each other.

I conclude, therefore, that the merchandise represented by exhibits 1, 4, 5, and 6 are ornamented articles of textile fabric within the meaning of headnote 3, schedule 3, *supra*. It is not classifiable under item 741.50, whether or not in chief value of beads, bugles, and gemstones, by reason of headnote 3 (c), schedule 3, *supra*.

For the reasons stated, the claims in the amended complaint are overruled. The action is dismissed and judgment will be rendered accordingly.