**PACIFIC FAST MAIL**

v.

**UNITED STATES.**

**C.D. 4333; Protest Nos. 68/40668–27321 and 66/56565–25933 against the decisions of the district director of customs at the port of Seattle.**

United States Customs Court,
First Division.
Feb. 25, 1972.

Glad & Tuttle, Los Angeles, Cal. (George R. Tuttle, Los Angeles, Cal., of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Susan C. Cassell, New York City, trial attorney), for defendant.

Before WATSON, MALETZ, and RE, Judges.

MALETZ, Judge:

In this case, plaintiff challenges the assessment of duty on certain model railroad locomotive superstructures and various other components of model locomotives, such as boiler fronts, stacks, steam domes, sand domes and pilot decks. The articles—which were imported from Japan and entered at Seattle, Washington, in 1965 and 1968—were assessed by the government at the rate of 35 percent for the 1965 entries and 31 percent for the 1968 entries under item 737.90 of the tariff schedules (19 U.S.C. § 1202) which covers "[t]oys, and parts of toys, not specially provided for * * * [o]ther."

Insisting that this assessment is erroneous and seeking refund, plaintiff claims that the imported model articles are not toys and are properly assessable under item 657.35 as articles of brass, not specially provided for, and thus duti-

able at the rate of 1.275 cents per pound plus 15 percent for the 1965 entries and 1 cent per pound plus 13.5 percent for the 1968 entries.

Defendant, in turn, while adhering to its contention that the importations consist of toys, contends that they are also models. Noting that the superior heading to the model provisions (items 737.-05 through 737.15) provides for "[m]odel trains * * * and other model articles, all the foregoing *whether or not toys* * * *" [emphasis added], defendant claims primarily that the record demonstrates that all the importations properly fall within the provisions for models and should have been classified therein even though they consist of toys since the provisions for models take precedence over the toy provisions. Alternatively, defendant argues that in the event the court determines that the model provisions do not apply to the importations, the articles are toys and were thus properly classified under item 737.-90 as other toys and parts of toys.

Set forth below are the relevant statutory provisions:

*Government's classification*

*Schedule 7, Part 5, Subpart E:*

*Subpart E headnotes:*

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, * * *

\* \* \* \* \* \*

2. For the purposes of the tariff schedules, a *"toy"* is any article chiefly used for the amusement of children or adults.

\* \* \* \* \* \*

Toys, and parts of toys, not specially provided for:

\* \* \* \* \* \*

737.90 Other ................. 35% ad val.
 31% ad val.[1]

*Government's claimed classification*

Model trains, model airplanes, model boats, and other model articles, all the foregoing whether or not

toys; and construction kits or sets for making or assembling such model articles:

\* \* \* \* \*

Other models, and construction kits or sets:

737.07 Rail locomotives * * * all the foregoing made to scale of the actual article at the ratio of 1 to 85 or smaller .. 16% ad val.
 14% ad val.[2]

\* \* \* \* \* \*

737.15 Other .............. 35% ad val.
 31% ad val.[3]

*Plaintiff's claimed classification*

*Schedule 6, Part 3, Subpart G:*

*Subpart G headnotes:*

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\* \* \* \* \*

Articles of copper, not coated or plated with precious metal:

657.30 Of copper, other than alloys of copper; of nickel silver or of cupro nickel ...... * * *

657.35 Other ................. 1.275¢ per lb. + 15% ad val.
 1¢ per lb. + 13.5% ad val.[4]

## Locomotive superstructures

At the outset, it is to be noted that the defendant has raised its alternative claim for classification of the importations as models for the first time at the briefing stage. However, plaintiff has not been prejudiced thereby inasmuch as the factual criteria for classification under this claim is not in dispute. See e. g., *Border Brokerage Co., Inc. v. United States,* 64 Cust.Ct. 446, 448, C.D. 4017 (1970). Thus the parties agree that the evidence establishes not only that the importations are components of models but also that they are made to the actual scale of existing trains at a ratio of 1 to 85 or smaller.

■■ It is in this setting that we turn now to the locomotive superstructure models to determine whether, as claimed by defendant, they are "unfinished" model rail locomotives—in which event they would come within the pur-

1. As modified by T.D. 68–9, effective January 1, 1968.

2. *Ibid.*

3. *Ibid.*

4. *Ibid.*

view of item 737.07 by virtue of General Interpretative Rule 10(h) which provides that "unless the context requires otherwise, a tariff description for an article covers such article * * * whether finished or not finished." Samples in evidence of these superstructures show that they consist of completely finished locomotives save for wheel and boiler front assemblies and hence are so far advanced toward their final form and shape that it is manifest that they are dedicated to use only as model locomotives. And when an article "has been so far processed towards its ultimate completed form as to be dedicated to the making of that article or that class of articles alone," it is classifiable under the *eo nomine* provision for the article. American Import Co. v. United States, 26 CCPA 72, 74, T.D. 49612 (1938). Indeed, the imported superstructure has reached the point where "in name and character" it has become a model rail locomotive. See Snow's United States Sample Express Co. v. United States, 8 Ct.Cust. App. 17, 21, T.D. 37161 (1917); Redden & Martin v. United States, 5 Ct.Cust. App. 485, 487, T.D. 35147 (1915); F. W. Myers & Co., Inc. v. United States, 425 F.2d 781, 57 CCPA 87, 90, C.A.D. 982 (1970). *Cf.* Pacific Fast Mail, Inc. et al. v. United States, 63 Cust.Ct. 468, 473, C.D. 3938 (1969). We therefore conclude that the imported superstructures are properly classifiable under item 737.07 as unfinished rail locomotive models dutiable at the rate of 16 percent or 14 percent, depending on the date of entry.

*Other components such as boiler front stacks, sand domes, steam domes and pilot decks*

This brings us to the question as to the proper classification of the remaining imported components involved here, namely, the boiler front stacks, the sand domes, the steam domes and the pilot decks. As to these, defendant contends that "while each of these articles is a part of a locomotive, each is a model in its own right and, as such, is specifically provided for in item 737.15."

Considering that defendant concedes that these particular imports are parts, its argument necessarily amounts to a contention that the term "other model articles" in the superior headnote to item 737.15 covers parts, among other things. We do not agree. For the principle is settled that an *eo nomine* provision does not include parts if parts are not specified. United States v. Draeger Shipping Co., 18 CCPA 308, 311, T.D. 44561 (1931); Herman Miller Clock Co. v. United States, 22 CCPA 332, T.D. 47363 (1934); Murphy & Co. et al. v. United States, 13 Ct.Cust.App. 256, T.D. 41201 (1925). Further, had Congress intended to cover parts under the provisions for models, it would have done so simply by using the word "parts" as it did throughout the tariff schedules. For example, item 737.20, the provision immediately following item 737.15, provides for dolls and *parts* of dolls; similarly item 737.90, the provision under which the imports were assessed, provides for other toys and *parts* of toys, not specially provided for. So it is throughout the tariff schedules that when Congress intended parts to be included by a particular provision, it so specified. "From this we * * * [come] to the conclusion that the omission of the provision for parts in * * * [the model provisions] was intentional on the part of Congress, and that we ought not, by judicial interpretation, to interpolate this language where it had not been used." United States v. Draeger Shipping Co., *supra*, 18 CCPA at 311.

Defendant next argues that in the event that the court finds—as it does—that these components are not classifiable under the model provisions, then they were properly classified by the government under item 737.90 as parts of toys. On this aspect, the record shows that the model locomotives of which the imported components are parts were designed and chiefly used for serious use by adult hobbyists; that they were generally sold in hobby stores or hobby shops; that they were made to the specifications of the National Model Railroad

Association; and that they were sold as individual items at prices ranging from $59.95 to $225.00. In this context, the legislative history of item 737.07 makes clear that Congress intended that such locomotive models were not to be classified as toys. This legislative history is as follows:

The initial draft of the tariff schedules provided:

Other models, and construction kits or sets:

737.07 Locomotives and railroad rolling stock, each unit containing by weight over 75 percent of copper, assembled by hand and made to precise scale of the actual article ..............16% ad val.

Subsequently item 737.07 was changed to its present form on the basis of the following explanation in the Tariff Classification Study, First Supplemental Report, pp. 80–81 (1962):

*Explanation:* Statements filed with the Ways and Means Committee object to the proposed definition of the term "toy" in that it includes any article chiefly used for the amusement of children *or adults*. Domestic producers claim the inclusion of adults in the definition would result in increased imports to their detriment. Certain importers claim this would result in higher rates of duty on their imports.

\* \* \* \* \* \*

An effort was made to resolve the model train issue in the original draft schedule on which public hearings were held in December 1958. *As a result of testimony and statements received from an interested importer in connection with that hearing, the provisions of item 737.07 were incorporated in the proposed schedule to preserve the substance of the practice with respect to locomotives and railroad rolling stock of types used by* *adult hobbyists*. Other types of imports were brought to the attention of the Commission in connection with the public hearing on this first supplemental report in proposed form. The foregoing change in item 737.07 takes into account the latest existing customs practices in regard to this matter. See CAD 746.[5] [Emphasis added.]

The testimony thus referred to was presented in December 1958 to the Tariff Commission by James F. Donnelly on behalf of the Pacific Fast Mail Co.— the plaintiff here—and pertained, among other things, to model locomotives similar to those with which we are here concerned. Tariff Classification Study, Schedule 7, pp. 666–75 (1960). In essence, Mr. Donnelly testified that these model locomotives were used by adult hobbyists; that they were not toys by reason of their high cost, the attention to detail, the devotion to scale, and the fact they were not used for play or amusement; that they were entirely distinguishable from cheap HO scale models, such as those made by Gilbert and Lionel which were held to be toys in United States v. E. B. Miller Associates, Inc., et al., 43 CCPA 14, C.A.D. 603 (1955); that even after the decision in *Miller*, the Customs Bureau at Seattle— where all of Pacific Fast Mail models were entered—consistently classified the imported models under paragraph 353 of the Tariff Act of 1930 as electrical articles at 13¾ percent or under paragraph 397 as articles of metal at 19 percent, and not as toys; that they have never been classified as toys; and that unless the provisions of proposed item 737.07 were modified, a manifest injustice would result in that the model locomotives in question would undergo a drastic increase in duty from 13¾ or 19 percent to a rate of 35 percent under item 737.15.

5. The case thus referred to is United States v. Polk's Model Craft Hobbies, Inc., et al., 47 CCPA 137, C.A.D. 746 (1960), in which the appellate court affirmed this court's holding that miniature railroad equipment made to run on HO scale track did not come within the toy provisions of the Tariff Act of 1930 since the evidence showed the equipment was not chiefly used for the amusement of children.

A further hearing on this matter was held by the Tariff Commission in November 1961 in which industry representatives again urged that item 737.07 be "pin[ned] down" to avoid an increase of duty. Tariff Classification Study, First Supplemental Report, pp. 294–95 (1962). In the next month—December 1961—a group of importers of HO and smaller scale model miniature railroad equipment submitted the following memorandum to the Tariff Commission concerning this question (Tariff Classification Study, First Supplemental Report, p. 417 (1962)):

> As was stated at the hearing on November 22, the present description of model railroad equipment in [the draft of] item 737.07 at 16 percent does not encompass more than an infinitely small percentage of HO model railroad equipment currently classified as other than toys pursuant to United States v. Polk's Model Craft Hobbies, Inc., Lansen-Naeve Corp., et al., C.A.D. 746 dated July 20, 1960. The primary reason for this lack of inclusion is the fact that item 737.07 was of necessity written before the decision of the Court of Customs and Patent Appeals in this case was made.

> Therefore, in order to avoid an increase under the new "Tariff Classification Study" of as much as 250 percent in the tariff on these items, and in order to effectuate current customs treatment, the representatives of the undersigned and counsel appeared at the hearing and have since conferred with the Tariff Commission staff.

> As a result of this conference it is suggested that the definition in item 737.07 be amended to read:

> "Rail locomotives and rail vehicles; railroad and railway rolling stock; track, including switching track; rail depots, roundhouses, signal towers, water towers, and other trackside structures; trolley buses and trolley-bus systems; and cable-car systems; all the foregoing made to scale of the actual article at the ratio of 1 to 85 or smaller."—16 percent ad val—45 percent ad val.

> *It is believed that the above language will effectuate the court decision which held that HO scale model railroad equipment, since designed for and used by adult hobbyists, is not in the toy classification; while at the same time preserving the current treatment at 35 percent for the larger, nonscaled toy trains.*

> It should be pointed out however that the 16 percent rate is probably slightly higher than it should be since by far the predominant value factor of these imports is the locomotives which, under the court case, are coming in presently at 13¾ percent ad valorem. [Emphasis added.]

This suggestion for amendment of item 737.07 was thus designed to preclude classification of model locomotives of the type involved here under the toy provisions with duty of 35 percent. What is of particular significance is that these suggested amended provisions of item 737.07 were adopted *in toto* by Congress. Underscoring this is the previously quoted statement in the Tariff Classification Study, First Supplemental Report, p. 81, that the amended provisions of item 737.07 resulted from testimony and statements received from an interested importer and "were incorporated in the proposed schedule to preserve the substance of the practice with respect to locomotives and railroad rolling stock of types used by adult hobbyists" under which practice such articles were not dutied as toys with a consequent rate of 35 percent but rather were assessed duty of almost half that or more. The short of the matter is that the foregoing provides the clearest manifestation of Congressional intent that locomotive models of the type here in controversy are not to be considered toys for tariff purposes.

 We turn now to plaintiff's affirmative claim that the model components in question are classifiable under item 657.35 as articles of brass, not specially provided for. The parties have

stipulated that these components are in chief weight of brass. Defendant, however, notes that headnote 1, subpart G, part 3 of schedule 6 of the tariff schedules provides (as we have seen before) that:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

To be classifiable under this provision, defendant argues, plaintiff must establish that the articles are not more specifically provided for elsewhere in the tariff schedules. According to defendant, "[w]hile this rule of law does not require plaintiff to offer evidence rebutting the possible application of every tariff item, it certainly requires substantial proof that obvious provisions which might describe the contested merchandise be distinguished." "Such obvious provisions raised by the instant record," defendant continues, "are item 737.07 and item 737.15, the model provisions." But even assuming the validity of defendant's argument on this particular score, it has previously been pointed out that inasmuch as the components in question are parts, they are not covered by the model provisions.

Finally, defendant argues that before the imported articles may be classified under item 657.35 as articles of brass, as claimed by plaintiff, it was incumbent upon it to prove that they were not classifiable under either item 678.50 as parts of machines, not specially provided for, or under item 688.40 as parts of electrical articles, not specially provided for, both of which provisions are assertedly more specific than the claimed provision, item 657.35. However, previous decisions of the appellate court and this court make it clear that where the government's classification is erroneous and the claim of the protest is correct, the defendant is charged with the burden of going forward with proof to negative plaintiff's case, either by showing that plaintiff's proof is insufficient or by proving that a more appropriate alternative provision is applicable. United States v. Edson Keith & Co., 5 Ct.Cust. Appls. 82 T.D. 34128 (1914); Eastman Tag & Label Co., et al. v. United States, 62 Cust.Ct. 237, 239–41, C.D. 3735 (1969). Equally applicable here is what this court said in the *Eastman* case (62 Cust.Ct. at 241): "Since the collector's classification has been successfully overcome, and plaintiff * * * [has] shown that the * * * [imported merchandise] comes within the provision for * * * [articles of brass, not specially provided for], the burden of proceeding further with respect to any alternative claim now falls upon the Government. It is the Government's obligation to come forth with proof to the contrary, and, absent such proof, its argument must fail."

In conclusion we hold (1) that the model locomotive superstructures are classifiable under item 737.07 as unfinished rail locomotive models; and (2) that the other model components are classifiable under item 657.35 as articles of brass, not specially provided for. To this extent the protests are sustained, and judgment will be entered accordingly.