**SANYO ELECTRIC INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

C.D. 4855; Court No. 75–9–02446.

United States Customs Court.

May 12, 1980.

**1312**

Sharretts, Paley, Carter & Blauvelt, P. C., New York City (Peter Jay Baskin, New York City, at the trial; Gail T. Cumins, New York City, with him on brief), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, New York City (Edmund F. Schmidt, New York City, at the trial; Susan Handler–Menahem, Teaneck, N. J., on brief), for defendant.

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of imported merchandise described on the invoices as "Power Failure Lights." The power failure lights were classified by the customs officials as "flashlights" under item 683.70 of the Tariff Schedules of the United States (TSUS). Consequently, they were assessed with duty at the rate of 35 per centum ad valorem.

Plaintiff protests that classification and, hence, the rate of duty assessed. It contends that the imported power failure light is not within the common meaning of the term "flashlight," and that, for customs classification purposes, it is "more than" a flashlight. Accordingly, plaintiff maintains that the merchandise is properly classifiable under the tariff item for "[e]lectrical articles . . . not specially provided for," item 688.40, TSUS, as modified by T.D. 68–9, with a rate of duty of only 5.5 per centum ad valorem.

Originally, plaintiff claimed alternative classifications as follows:

(a) "[V]isual signalling apparatus . . . electrical," under item 685.70, as modified by T.D. 68–9, at the rate of 4 per centum ad valorem;

(b) "Portable electric lamps with self–contained electrical source . . . Other," under item 683.80 at the rate of 13.75 per centum ad valorem; or

(c) "Illuminating articles . . . of base metal . . . Other," under item 653.39 at the rate of 19 per centum ad valorem.

Plaintiff, however, does not press for classification under these alternative claims.

Plaintiff maintains that the evidence clearly establishes that the power failure light has at least the following three functions:

*first*, as a visual warning signal device;

*second*, as a fixturelike illuminating device, i. e., as a stationary light source; and

*third*, as a flashlight.

Plaintiff submits that unless this court determines that "all but one of the above functions were incidental functions," the power failure light is not classifiable under (a), (b), or (c) above since they "are not sufficiently diverse to encompass the imported article." Hence, plaintiff contends that TSUS item 688.40 is the only tariff provision which fully describes the power failure light with its multiple functions.

The following are the pertinent provisions of the tariff schedules:

Classified under:

"Portable electric lamps with self-
    contained electrical source, and
    parts thereof:
683.70        Flashlights and parts thereof ...... 35% ad val."

Claimed under:

"688.40   Electrical articles, and electrical
          parts of articles, not specially
          provided for ........................ 5.5% ad val."

It is conceded that the importations are portable; are illuminating articles not in chief value of brass; are electric; contain an electric light and self–contained electric source; and are not designed to be operated by propane or any other gas, or by compressed air, kerosene or gasoline.

It is also conceded that when operating on direct current, the importations are used as small, battery–operated, portable electric lights for the purpose of illumination, and to provide a warning of alternating current failure, which defendant considers a subsidiary use. The direct current is supplied by a self–contained rechargeable battery. The defendant concedes that the pilot light may have a fugitive use to indicate that the self–contained batteries are being re-charged, and that the alternating current is flowing. It also admits that in the event of alternating current power failure, the imported articles may be activated by the direct current supplied by the self–contained rechargeable battery.

It is agreed that the imported articles contain a relay and other necessary components which permit their operation on both alternating and direct current, and that the pilot light operates only on an external alternating current.

In essence, plaintiff maintains that the power failure light cannot be classified as a flashlight under TSUS item 683.70 because it incorporates or contains nonsubordinate or coequal features or functions, in addition to those which bring an article within the common meaning of the term "flashlight."

Defendant, on the other hand, contends that the merchandise has been properly classified as a "flashlight," which it states has been judicially determined to be "a small, battery–operated, portable electric light." In support, it cites *Biddle Purchasing Co. v. United States*, 48 Cust.Ct. 251, 257, C.D. 2345 (1962), *aff'd*, 50 CCPA 71, C.A.D. 823 (1963), and *Air–Sea Forwarders, Inc. v. United States*, 76 Cust.Ct. 268, C.D. 4665 (1976). The defendant submits that any additional features possessed by the power failure light are subsidiary, subordinate and incidental to its functioning as a flashlight.

Essentially, the question presented is whether the merchandise is a flashlight within the *eo nomine* provision for "flashlights," as classified by the customs officials, or whether it is something "more than" a flashlight, as claimed by plaintiff. It is the determination of the court that the plaintiff has overcome the presumption of correctness which attaches to the classification of the customs officials. 28 U.S.C. § 2635(a). Plaintiff has succeeded in establishing that the imported power failure lights were incorrectly classified as "flashlights," and should be properly classified as "[e]lectrical articles . . . not specially provided for."

At trial, plaintiff called Mr. Hitoshi Kubo, manager of the Appliance Department, Lighting Products Manufacturing Division of Sanyo Electric Co., Ltd., Hyogo, Japan, the designer of the power failure light. It also called Mr. Morton M. Tillman, vice president of sales for Sanyo Electric Inc., located ·in Moonachie, New Jersey. Defendant's witness was Mr. Thomas H.

Nicholl, president and owner of Nicholl Brothers, Inc., a domestic manufacturer of battery–powered portable lights.

Numerous exhibits, 13 for plaintiff and 15 for defendant, were received in evidence, including representative samples of the imported merchandise. Among the exhibits examined by the court were several power failure lights, a variety of flashlights, an emergency exit light, and a demonstrator.

The importations consist of two Sanyo power failure lights, both of which were designed by Mr. Kubo. He said that except for packaging, they were identical. A small brochure in the box in which the merchandise was sold gives instructions as to its use. The following illustrations of the imported power failure lights are contained in the brochure:

Fig 1

Note: Make sure that the switch is on CHG position.

Fig 2

3. Make sure that the reflecting lens and its cover are properly replaced with the protruding grip on the bottom.

According to the brochure instructions, the built–in plug is inserted into a wall socket (Fig. 1). By putting the switch in the upper (ON) position, the batteries are charged. A small pilot night light is lit while charging. Should there be a blackout, and the house current goes off, a relay will automatically switch on the power failure light.

Although the brochure states that "[t]o use as a portable flashlight, unplug the unit and switch on–off with the slide switch,"

Mr. Tillman, vice president of sales for Sanyo Electric Inc., explained that the statement was not consistent with his marketing approach. To recharge the batteries, the charging plug is pulled out from the rear of the unit and is plugged into an electric outlet (Fig. 1).

An examination of the exhibits shows they are lightweight and can be held in the palm of the hand. Their dimensions are approximately 3½ inches high, 2½ inches wide and 1½ inches deep. The back and sides appear to be of plastic. Sanyo's frontal identification reads "Power Failure Lite." The descriptive wording on the back indicates the units are rechargeable. They have a plug in the back and a side switch designated "ON CHG OFF."

The picture of the model and advertising copy state that the "Power Failure Lite" is a night light, a power failure light and a conventional flashlight for use "during emergencies, anytime–anywhere."

Mr. Kubo described the importations as power failure lights which he had designed and developed. The witness characterized the use of Sanyo's power failure light as follows: (1) to notify or warn that there has been a power failure; (2) as a stationary light source after a power failure; and (3) to carry around after a power failure. Mr. Kubo stressed that the *principal, primary* intended purpose of these lights is notification of a power failure.

The witness testified that he had also designed Sanyo's rechargeable flashlights. They are used where there is no outlet, and for the purpose of lighting up something in the distance. The features of a power failure light could not be built into the rechargeable flashlight as shaped. There is also a difference in charging time. The power failure light, when fully charged, operates for 50 minutes, and takes over 32 hours to recharge fully. The flashlights, on the other hand, emit light for 80 minutes and take 16 hours to recharge.

Mr. Tillman, vice president of sales for Sanyo, described the total concept of plaintiff's power failure light to be an emergen-

cy device in the event of power failure. He stated that his company presents this device as a power failure light, and as a safety device. The witness explained that when there is a power failure, the Sanyo light comes on automatically. Since it is sold for use in a living room, reception room, a doctor's or dentist's office, it is designed to fit unobtrusively into a wall socket, and must be as flush as possible against the wall.

Mr. Tillman differentiated between his company's power failure light and its rechargeable flashlight. The type of light emitted by the power failure light has a wide radius. The flashlight has a concentrated beam of light. The witness said that if there were a power failure during daylight, the power failure light would still function, even though illumination might not be needed. He described a power failure alarm made in Japan for the Oreck Corporation as the same in principle but a more sophisticated device audio in nature. The various Sanyo power failure lights, however, are strictly visual devices. Mr. Tillman testified that the primary function of both is to give warning of a "power failure and/or interruption." He stated that, among other differences as to convenience and cost, the power failure lights are too bulky to use as substitutes for flashlights.

Defendant's witness, Mr. Nicholl, is president and owner of Nicholl Brothers, a domestic firm primarily engaged in the manufacture of battery–operated portable lights. The witness, an engineer, testified that he created most of the products that his company manufactures, and was generally familiar with flashlights that are marketed in this country.

Mr. Nicholl agreed with the Webster's Dictionary definition of a flashlight as "a small portable electric light with a self–contained electrical source." He described the importation as a flashlight. The witness agreed that it was a portable electric powered light. He did not consider either charging or operation time to be determinative as to whether a small portable electric light is a flashlight.

Mr. Nicholl described three of defendant's exhibits as flashlights of different shapes, one of which was intended to be mounted on a wall or in a car. He described his company's "Dark Blazer PF2" power failure light, which was not as yet available on the market, as a portable rechargeable flashlight which would be marketed as a regular flashlight. The exhibit itself, however, bears the designation "NIGHT LIGHT." The witness testified that the "General Electric Security Light," a power failure light, was similar to the "Dark Blazer PF2." His testimony in effect indicated that all flashlights are not night lights, and that a light can be both a flashlight and a power failure light.

As correctly stated by the defendant, the term "flashlight" has been judicially determined to be "a small, battery–operated, portable electric light." This court recently reaffirmed that definition in *Air– Sea Forwarders, Inc. v. United States*, 76 Cust.Ct. 268, C.D. 4665 (1976), wherein a plastic battery and switch case, and a metal cap with gooseneck extension and lamp socket, were classified under TSUS item 683.70 as flashlights. Plaintiff claimed proper classification under TSUS item 683.-80 as other portable electric lamps. The evidence established that, after importation, the articles were assembled, equipped with a lens–end type bulb, and sold to purchasers who supplied "C" type batteries, and used them as inspection lights in small, inaccessible areas. Judge Richardson, in holding that the importations were within the broad, nonuse–oriented common meaning of "flashlight," stated:

"The imported article is a flashlight within the meaning of item 683.70, in the opinion of the court. *Webster's Third New International Dictionary* (1961), contemporaneous with the promulgation of the TSUS, defines the term flashlight as 'a small battery–operated portable electric light.' This definition, cited approvingly by this court in *Biddle Purchasing Co. v. United States*, 48 Cust.Ct. 251, 257, C.D. 2345 (1962), aff'd, 50 CCPA 71,

C.A.D. 823 (1963), is expressive of the common meaning of the term flashlight. And it is to be noted that this definition is broad based, and is not circumscribed by usage or any physical devices as would influence usage. Hence, as the evidence in this record demonstrates, a wide variety of articles are bought, sold, and known as flashlights.

With respect to the article in issue, there can be no doubt but that it fits comfortably within the ambit of the definition. It is small, battery–operated, and portable, and is, *a fortiori*, an electric light. The fact that the imported article is also known specifically as an inspection light does not change its character as a flashlight. This description only serves to emphasize its adaptation to a specific use, as is the case with other types of flashlights. It is, nevertheless, a *species* of flashlight. And the instant record makes abundantly clear the fact that within the trade and commerce of the United States the imported article and other articles of this class and kind are marketed as, and considered to be, inspection flashlights." 76 Cust.Ct. at 271–272.

The defendant urges the application of the well settled principle of customs law that an *eo nomine* designation of an article includes all forms of the article, and asserts that the power failure light is merely an improvement of the basic flashlight. *T. M. Duche & Sons, Inc., et al. v. United States,* 44 CCPA 60, C.A.D. 638 (1957); *Crosse & Blackwell Co. v. United States,* 36 CCPA 33, C.A.D. 393 (1948); *Nootka Packing Co. et al. v. United States,* 22 CCPA 464, T.D. 47464 (1935).

After a careful examination of the imported power failure lights, all of the other exhibits, and the testimony of the witnesses, the court has concluded that the power failure lights are not embraced by the tariff designation "flashlight." The imported power failure light is neither a flashlight within the common meaning of the term, nor an improvement on a flashlight. It is a new article of commerce known as a power failure light.

In the *Air–Sea Forwarders, Inc.* case, the inspection light in the language of the court was "a *species* of flashlight." Indeed, in the trade and commerce of the United States, the articles were marketed and "considered to be, inspection flashlights." It is particularly noteworthy that although adapted to a specific use, the inspection flashlight performed but a single function. In the present case, however, the exhibits and the record leave no doubt that the power failure light has multiple functions. It is used to alert or warn that there has been a power failure, as a stationary light source after a power failure, and as a portable light source. Unlike the inspection light of the *Air–Sea Forwarders, Inc.* case, the power failure light at bar cannot be said to be a species of "flashlight" that "fits comfortably within the ambit of the definition."

Mr. Kubo distinguished the aims or purposes of the power failure light and those of a flashlight. He testified that in designing the power failure light, he had in mind its use primarily to alert that there had been a power failure. If a power failure occurred at night, the light can be carried for purposes of illumination. Mr. Kubo indicated, however, that it is better to keep the light in the outlet, even after a power failure, since the surrounding area would be lit up making it easier for people to move about. He added that, unlike the power failure light, the aim of a flashlight is to light up something in the distance, so that the light is focused as much as possible.

Plaintiff contends it has established that the power failure light with its multiple functions is properly classifiable under TSUS item 688.40 which embraces "[e]lectrical articles ... not specially provided for." On the record before the court, it is clear that the power failure light is a multifunction article whose power failure warning feature cannot be considered subsidiary, subordinate or incidental to any function as a flashlight. It is well settled that, for tariff purposes, a combination or multifunction article is not classifiable under a specific statutory provision which describes only

one of those features or functions since it is "more than" the article described. Consequently, the power failure light is "more than" a flashlight, as classified by the customs officials.

In *Robert Bosch Corp. et al. v. United States*, 63 Cust.Ct. 96, 103–104, C.D. 3881 (1969), this court described the "more than" principle of customs law as follows:

"The principle is well settled that where an article is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant, it cannot find classification within such provision. It is said to be more than the article described in the statute. *Cragston Corporation v. United States*, 51 CCPA 27, C.A.D. 832 (1963); *United States v. The A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794 (1962); *Garrard Sales Corp. v. United States, supra* [35 CCPA 39, C.A.D. 369 (1947)]; and *Hirsch & Co. et al. v. United States*, 4 Ct.Cust.Appls. 82, T.D. 33365 (1913)."

The statement was expressly cited and relied upon by this court in *Dollar Trading Corp. v. United States*, 349 F.Supp. 1395, 1399, 67 Cust.Ct. 308, 314, C.D. 4290 (1971). The opinion in the *Dollar Trading Corp.* case was affirmed and adopted by the Court of Customs and Patent Appeals as its own. *Dollar Trading Corp. v. United States*, 468 F.2d 631, 60 CCPA 10, C.A.D. 1074 (1972). See also *United States v. Acec Electric Corporation*, 474 F.2d 1009, 60 CCPA 113, C.A.D. 1091 (1973); *Fedtro, Inc. v. United States*, 449 F.2d 1395, 59 CCPA 16, C.A.D. 1028 (1971). Writing on the "more than" doctrine, the Court of Customs and Patent Appeals has stated that "each case must in the final analysis be determined on its own facts. See *United Carr Fastener Corp. v. United States*, 54 CCPA 89, C.A.D. 913 (1967), and the cases cited therein." *E. Green & Son v. United States*, 450 F.2d 1396, 59 CCPA 31, C.A.D. 1032 (1971).

An application of the "more than" principle is found in *Oxford International Corp.*

*v. United States,* 70 Cust.Ct. 217, C.D. 4433 (1973). In that case, battery–operated horn–lights, designed and used solely on the handlebars of bicycles, were classified as part of bicycles under TSUS item 732.37. Plaintiff did not deny that the horn–lights were parts of bicycles, but claimed that the merchandise was also electrical sound or visual signalling apparatus and, by reason of General Interpretative Rule 10(i), was classifiable under TSUS item 685.70. General Interpretative Rule 10(i) provides that—

"A provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

The court found that although the horn portion of the combination article was an electrical sound signalling device, the light portion did more than merely serve as a signal in that it primarily functioned as an illuminating device. Consequently, the court determined that the horn–lights possessed an important illuminating feature at least coequal to their signalling function, thus making them more than signalling apparatus, and held them to be properly classifiable as parts of bicycles.

Other cases which illustrate the "more than" doctrine are *Pollard Bearings Corporation v. United States*, 511 F.2d 568, 62 CCPA 61, C.A.D. 1146 (1975) (fan and pump shaft bearings "more than" parts for water pumps); *Montgomery Ward & Co. v. United States*, 73 Cust.Ct. 187, C.D. 4573 (1974) (combination article containing a radio, phonograph and tape player, held more than a radio–phonograph).

In customs classification cases it has often been noted that a representative sample of the merchandise is a potent witness. *Karoware, Inc. v. United States*, 564 F.2d 77, 65 CCPA 1, C.A.D. 1197 (1977); *United States v. The Twin Wintons*, 535 F.2d 636, 63 CCPA 84, C.A.D. 1171 (1976). As stated in the *Oxford International* case, *supra*, "the character and design of the sample itself may compel a finding as to the primary use of the merchandise." 70 Cust.Ct. at 223. This principle is also equally applicable here. On all of the evidence present-

ed, it is the determination of the court that plaintiff has met its burden of proving that the Government's classification of the imported merchandise as "flashlights," within the purview of TSUS item 683.70, was erroneous. A careful examination reveals that the importations are essentially power failure lights with additional functions.

■ Having concluded that the importations are "more than" flashlights, the court must consider plaintiff's claim that the power failure lights are properly classifiable under TSUS item 688.40 as "[e]lectrical articles . . . not specially provided for." The evidence clearly establishes that the imported merchandise has at least three functions. It is a visual warning signal device, a fixturelike illuminating device (in that it was designed to function as a stationary light source), and a flashlight. The illuminating function makes the power failure light "more than" an article contemplated by TSUS item 685.70 which covers electrical visual signalling apparatus. The power failure warning device function and the flashlight function make the imported article "more than" an electric lamp under item 683.80, or an illuminating article under item 653.39.

Plaintiff maintains that the imported light is a unique article of special design and, consequently, is a new and distinct commercial article requiring a classification that encompasses more than one function and which most closely describes it as a single entity. The classification question in the case at bar is analogous to that in *Mattel, Inc. v. United States*, 76 Cust.Ct. 84, C.D. 4639 (1976). In *Mattel*, articles invoiced as "voice units," which were inserted into dolls and other objects to reproduce prerecorded sentences or sayings, were classified as parts of toys, not specially provided for, under TSUS item 737.90. They were claimed to be properly classifiable as phonographs under TSUS item 685.32. The court found that the imported "voice unit" had a permanently affixed interleaved record, which did not provide merely an auxiliary or incidental function but was at least of equal importance to the sound reproduc-

ing or phonographic portion of the article. In holding that the imported articles had been properly classified as parts of toys, Judge Maletz stated:

"Accordingly, it must be concluded that the article in controversy is not just another version or model of a phonograph. It is rather a new and distinct commercial entity containing the elements of both a phonograph and a record which, by reason of their special design and permanent attachment, have merged into a single unit possessing certain unusual, if not unique, features. Consequently, this new entity is something more than as well as other than the phonographs encompassed by item 685.32 and is not classifiable thereunder. See e. g., *United States v. A. W. Fenton Co.*, 49 CCPA, 45 C.A.D. 794 (1962); *United States v. New York Merchandise Co.*, 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970); *United States v. Acec Electric Corp.*, 60 CCPA 113, C.A.D. 1091, 474 F.2d 1009 (1973); *United States v. Howard Hartry, Inc.*, 60 CCPA 140, C.A.D. 1099, 477 F.2d 1400 (1973). As our appellate court recently reiterated, merchandise which in fact constitutes more than a particular article is not classifiable as that article. *Pollard Bearings Corp. v. United States*, 62 CCPA 61, 64, C.A.D. 1146, 511 F.2d 568, 571 (1975). See also e. g., *United States v. Flex Track Equipment Ltd.*, 59 CCPA 97, C.A.D. 1046, 458 F.2d 148 (1972) . . . ." 76 Cust.Ct. at 91.

■ The power failure lights do not provide merely an auxiliary or incidental function to the flashlight function. From an examination of the article, and the testimony of Mr. Kubo which the court finds credible and reliable, the court has concluded that the power failure warning function is its primary function or purpose. Even if the power failure warning function were to be at least a coequal nonilluminating function, it would still prevent classification under a provision which covers only one of those functions. See *The Ashflash Corporation v. United States*, 412 F.Supp. 585, 76 Cust.Ct. 112, C.D. 4643 (1976), and cases cited therein.

In *The Ashflash Corporation* case, the question presented pertained to the proper classification of "blinker" lanterns which had been classified as portable electric lamps under TSUS item 683.80. As in the present case, plaintiff claimed that they were properly classifiable as "[e]lectrical articles ... not specially provided for" under TSUS item 688.40. In sustaining plaintiff's claim, the court held that the "blinker" lanterns were portable battery–operated combination articles comprised of a searchlight portion for illumination, and an automatic signal–warning red flasher for emergency signalling; that the imports served two independent and coequal functions, as a searchlight and as a signal–warning flasher; and that the latter function was not incidental, auxiliary or subordinate to the searchlight function. The "blinker" lanterns, therefore, were "more than" the portable electric lamps covered by item 683.80, as classified. Consequently, as combination or multifunction articles they were properly classifiable and dutiable as electric articles not specially provided for under item 688.40, as claimed.

In an earlier case, *Fedtro, Inc. v. United States*, 376 F.Supp. 1398, 72 Cust.Ct. 267, C.D. 4548 (1974), the question presented was whether a CH–ACD battery charger was merely a "rectifying apparatus," as classified under TSUS item 682.60, or whether, as urged by plaintiff, its testing element removed it from that classification because it was "more than" a "rectifying apparatus." In *Fedtro*, again classification was claimed under item 688.40, TSUS, as "[e]lectrical articles ... not specially provided for." The court found that the battery charger performed the dual functions of *testing* and *charging* batteries. Hence, it was established that it had a use *in addition* to its use as a battery charger. In holding that the merchandise was therefore properly dutiable under item 688.40, as claimed by plaintiff, Judge Newman stated:

"To reiterate, according to the operating instructions, 1.5 volt batteries should *first* be tested to determine whether or not they are rechargeable, which prevents one from attempting to recharge 'dead'

or fully charged batteries. This procedure points up that there are circumstances when the testing feature would be utilized, but the charging feature would not be utilized. Additionally, the testing feature indicates whether a battery requires merely a 'booster' charge or a full charge, and such feature reveals whether the recharge was effective. Thus, it is evident, that the tester and charger complement each other. Plainly, then, the testing element of the CH–ACD battery charger (which does not convert a.c. to d.c.) is indeed a highly significant feature of the article and, ... makes the article something more than 'rectifying apparatus.' The cases relied upon by the Government, cited *supra*, have been carefully considered, but as I do not view the testing feature as merely incidental or auxiliary, those cases are not deemed controlling relative to the present merchandise. Since there is no dispute that the merchandise is electrical, it is properly dutiable under the provision in item 688.-40, TSUS for electrical articles, not specially provided for, as claimed by plaintiff." 72 Cust.Ct. at 275, 376 F.Supp. at 1404.

The power failure light is an electrical multifunction article. In accordance with the foregoing cases, it is clear that it is classifiable under TSUS item 688.40 as "[e]lectrical articles ... not specially provided for."

Although plaintiff has met its burden of proof, the defendant contends that a claim under a "not specially provided for" clause itself imposes upon plaintiff a burden of proof to establish *prima facie* that the article is in fact not provided for elsewhere. Furthermore, the defendant asserts that that burden cannot be discharged simply by establishing that the article is described by the remainder of the language of the "not specially provided for" provision. The court disagrees, and adopts the view expressed by Judge Newman, who, in rejecting a similar contention in *E. R. Squibb & Sons, Inc. v. United States*, 75 Cust.Ct. 193, C.R.D. 75–7 (1975), wrote:

"It is, of course, fundamental that plaintiff has the burden of establishing not only that the Government's classification is erroneous, but also of establishing that the claimed classification is correct. *United States v. L. Batlin & Son, Inc.*, 61 CCPA 17, C.A.D. 1111, 487 F.2d 916 (1973); *United States v. New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970). However, I am unable to agree with defendant's contention that plaintiff has the burden of negating the possible applicability of tariff provisions other than item 750.40 merely because item 688.40 contains a 'not specially provided for' clause. In *Pacific Fast Mail v. United States*, 68 Cust.Ct. 41, 49, C.D. 4333, 338 F.Supp. 506 (1972), the court rejected a similar contention by defendant, holding that where the plaintiff has presented a prima facie showing that the Government's classification is erroneous and the claim of the protest is correct, the defendant is charged with the burden of going forward with proof to negate plaintiff's case, either by showing that plaintiff's proof is insufficient or by proving that a more appropriate alternative provision is applicable. And *cf. L. Batlin & Son, Inc., supra.*

Accordingly, if the Government's classification in this case is proven erroneous, and if plaintiff establishes the applicability of the claimed provision, the burden of proof shifts to defendant to affirmatively establish the propriety of any asserted alternative classification. However, defendant has not asserted any alternative classification in its answer. Consequently, there is no issue concerning any alternative classification before the court." 75 Cust.Ct. at 195–196.

In view of the foregoing, it is the determination of the court that the imported power failure lights have been erroneously classified as "flashlights," and are properly classifiable under TSUS item 688.40, as modified, as "[e]lectrical articles ... not specially provided for," with duty at the rate of 5.5 per centum ad valorem.

Judgment will be entered accordingly.