TRIDON, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81-10-01476

Before MALETZ, *Senior Judge.*

### Opinion and Order

Sharretts, Paley, Carter & Blauvelt (*Peter Jay Baskin, Gail T. Cumins* and *Duncan A. Nixon* on the brief) (*Peter Jay Baskin* and *Donald W. Paley* at the trial) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Robert H. White* on the brief and at the trial) for the defendant.

(Dated April 26, 1983)

MALETZ, *Senior Judge:* The issue in this classification action is whether certain motor vehicle signal flashers are "more than" electrical switches or relays in that they make an audible clicking sound when activated. Upon importation the signal flashers were classified by Customs as "electrical switches" under the provisions of item 685.90 of the Tariff Schedules of the United States:

685.90          Electrical switches, relays,\* \* \* and other electrical apparatus for making or breaking electrical circuits, \* \* \* all the foregoing and parts thereof ....... 7.7% ad val.

Plaintiff Tridon, Inc. (Tridon) contends that the imported merchandise was improperly classified because, in addition to its visual signalling function, it performs a non-subordinate, co-equal sound signalling function. Tridon thus argues that these co-equal visual and aural functions render the signal flashers "more than" any of the articles names under item 685.90. Accordingly, Tridon claims that the flashers are properly classifiable under item 685.70:

| | | |
|---|---|---|
| 685.70 | Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus, all the foregoing which are electrical, and parts thereof................................ | 3.7% ad val. |

Alternatively, Tridon claims that the merchandise is properly classifiable under item 692.32 as other parts of motor vehicles:

| | | |
|---|---|---|
| | Chassis, bodies (including cabs), and parts of the foregoing motor vehicles. | |
| | Other: | |
| * * | * * * * | |
| | Other:......................................... | |
| * * | * * * | * |
| 692.32 | Other................................ | 3.8% ad val. |

For the reasons that follow, the court concludes that the sound signalling function of the signal flasher is subordinate to its visual signalling mission. Accordingly, Tridon's complaint is dismissed.

The imported merchandise consists of a two- and three-terminal signal flasher, denominated the "SD–12" and "SD–13", respectively. Except for the difference in the number of terminals, the articles are quite similar, both consisting of a coil, armature and other electric components encapsulated in a tubular clear plastic shell which measures approximately two inches long and one inch in diameter.

These signal flashers are used in conjunction with a motor vehicle's turn signal and hazard warning light system. They are capable of activating the vehicle's turn signal lights as well as the hazard warning flashers. The flashing phenomenon is achieved by means of an electromechanical relay which opens and closes load carrying circuits, thus completing and breaking the electrical circuit and causing the lights to flash. During this operation a continuous clicking noise is produced by the movement of the flasher's armature striking a ferrite core as the circuit is closed, and a similar clicking sound as the circuit opens.

At the trial Tridon's witness testified that one of the design considerations in developing the signal flasher was to produce a loud audible signal to remind the driver that the flasher system is operating. To obtain the desired sound the mass of the armature was increased and the armature's pivot point was altered. In addition, the record shows that this function is a safety feature advertised by Tridon. Given these facts, Tridon submits that the sound signalling function of the imported merchandise makes it "more than" a switch, relay or other electrical apparatus for making or breaking electrical circuits.

It is true that a combination or multifunction article cannot be classified under a provision which describes only one of the article's multiple functions, inasmuch as it is "more than" the article so described. *Sanyo Electric, Inc.* v. *United States,* 84 Cust. Ct. 167, 175, C.D. 4855 (1980), *aff'd,* 68 CCPA 14, C.A.D. 1258, 642 F. 2d 435 (1981). Stated somewhat differently, an article having two functions which are co-equal cannot be classified according to either function. *Gallagher & Ascher Co.* v. *United States,* 63 Cust. Ct. 223, 226–27, C.D. 2899 (1969). At the same time, however, it is the primary function of the item which governs its classification. *E. Green & Son* v. *United States,* 59 CCPA 31, C.A.D. 1032, 450 F. 2d 1396 (1971). Thus, where an item has both a primary and an incidental, subordinate or secondary function, it will be classified on the basis of the former. *Trans-Atlantic Co.* v. *United States,* 60 CCPA 100, C.A.D. 1088, 471 F. 2d 1397 (1973); *United Carr Fastener Corp.* v. *United States,* 54 CCPA 89, C.A.D. 913 (1967). The question whether a given function is secondary or co-equal is one of fact. "To say that an article is 'more than' that described by a particular tariff provision is to say little more than that, in the opinion of the Court, the provision cannot be interpreted to cover it." *Englishtown Corp.* v. *United States,* 64 CCPA 84, 87, C.A.D. 1187, 553 F. 2d 1258, 1260 (1977). In the opinion of this court the clicking sound produced by the signal flasher is subordinate to its visual function.

The record establishes that the primary function of the signal flashers is switching—the making and breaking of an electrical circuit by means of the opening and closing of electrical contacts. For tariff purposes, a switch is defined as a device for making, breaking or changing the connections in an electrical circuit. *See Brown Boveri Corp.* v. *United States,* 53 CCPA 19, 22, C.A.D. 870 (1966); *Robert Bosch Corp.* v. *United States,* 63 Cust. Ct. 96, 101, C.D. 3881 (1969). Tridon's witness testified that the basic mechanism which produces both the visual and aural facets of the flasher is a device which makes and breaks circuits. The fact that the opening and closing of the contacts creates an audible sound, which has the incidental effect of alerting the driver, does not make the flasher more than a switch. *Cf. Craig Corp.* v. *United States,* 75 Cust. Ct. 161, C.D. 4622 (1975) (existence of components in a foot switch other than the exact part which does the switching does not make the

importation more than a switch since these other components are all directly related to the operation of the switch.)

Even though the audible signalling function may be a safety feature which was designed into the flasher, that feature is still nothing more than the direct result of, and incidental to, the primary function of the flasher—switching. It is this primary function which controls the classification question presented here. *See, e.g., United States v. Oxford International Corp.,* 63 CCPA 102, C.A.D. 1154, 517 F. 2d 1374 (1975); *Trans-Atlantic Co. v. United States,* 60 CCPA 100, C.A.D. 1088, 471 F. 2d 1397 (1973); *United Carr Fastener Corp. v. United States,* 54 CCPA 89, C.A.D. 913 (1967).

Tridon's heavy reliance on *Fedtro, Inc. v. United States,* 59 CCPA 16, C.A.D. 1028, 449 F.2d 1395 (1971), is misplaced. There the merchandise connected the front and back signal lamps in an automobile, performing the dual function of flashing the circuits for the directional signals as well as activating an indicator light when the vehicle's brakes were engaged. The court found the importation was more than a switch because the breaking light circuitry was an additional function which took no part in, and was significantly different from, the switching function. Here, by contrast, the clicking sound is the direct result of the operation of the switch, there being no separate or independent circuitry involved in its production. *See also Robert Bosch Corp. v. United States, supra.*

In view of the foregoing discussion, Tridon's final contention that the signal flashers are parts of visual or sound signalling apparatus under item 685.70, or other motor vehicle parts under item 692.32, is easily disposed of. Under General Interpretative Rule 10(ij) [1] a tariff schedule provision for an article as a part cannot prevail over a specific provision for such part. Since the record amply demonstrates that the importation is nothing more than a switch which performs both a visual and sound function, under Rule 10(ij) the specific provision for switches governs. See *United States v. Rembrandt Electronics, Inc.,* 64 CCPA 1, C.A.D. 1175, 542 F.2d 1154 (1976); *ITT Thompson Industries, Inc. v. United States,* 3 CIT 36, *aff'd,* No. 82-22 (C.A.F.C. Dec. 23, 1982); *Craig Corp.,* 75 Cust. Ct. at 162-63; *J. E. Bernard & Co. v. United States,* 59 Cust. Ct. 31, C.D. 3060 (1967).

For all the foregoing reasons, the classification under item 685.90 is affirmed and the action is hereby dismissed.

---

[1] That rule provides: A provision for parts of an article covers a product solely or chiefly used as part of such article but does not prevail over a specific provision for such part.